RIDE-AWAY HANDICAP EQUIPMENT
CORP.,

        **Plaintiff,**

v.                             **Case No. 8:09-cv-2298 -T-23TBM**

JENNIFER F. TRACEY, et al.,

        **Defendants.**

_____/

## REPORT AND RECOMMENDATION

      THIS MATTER is before the court for a Report and Recommendation on **Plaintiff's**

**Amended Motion for Preliminary Injunction** (Doc. 12)[1] and Defendants, Jennifer F. Tracey

("Tracey") and Mobility Freedom, Inc.'s ("Mobility"), response thereto (Doc. 15).  Oral

arguments on the motion were heard November 30, 2009.[2]


                        I.

      Plaintiff initiated this action on November 10, 2009, by filing a Verified Complaint for

damages, injunctive and other equitable relief (Doc. 1) against Tracey, Gentilella, and Mobility.

By its Complaint, Plaintiff asserts claims for breach of the "Covenant Not to Compete"

---

[1]The court has already addressed the Plaintiff's emergency request for restraining order and denied same.  *See* (Docs. 4, 13).

[2]Although served with the pleadings in this matter on November 14, 2009 (Doc. 17) , Gentilella has made no appearance or filed any paper in his defense.  Thus, I recommend the Defendant Gentilella be found in default.  *See* Fed. R. Civ. P. 55.  The claims asserted against Gentilella are addressed herein accordingly.

contained within Non-Competition Agreements ("Agreements") executed by Tracey and Gentilella (Count I); breach of the confidentiality and non-disclosure provisions in the Agreements by Tracey and Gentilella (Count II); breach of the non-solicitation provisions of the Agreements by Tracey and Gentilella (Count III); tortious interference with a contractual relationship by Mobility for wrongfully inducing Tracey and Gentilella to breach their Non-Competition Agreements (Count IV); tortious interference with advantageous business and contractual relationships with its clients by Tracey, Gentilella, and Mobility (Count V); and defamation by Tracey (Count VI).

By its Verified Complaint, Plaintiff, Ride-Away Handicap Equipment Corp. ("Ride-Away") is a New Hampshire corporation licensed and authorized to conduct business in Florida and engaged in the business of vehicle sales/modification for the disabled, providing clients with accessible equipment such as wheelchair lifts and ramps, and brake and steering controls.  It alleges that it expends significant time and resources developing its client base, attending to client needs, creating and implementing sales and marketing strategies, and training employees and that its product development and plans, business plans, sales and marketing strategies, and client information are confidential and proprietary, for which it makes reasonable efforts to maintain the secrecy and confidentiality in order to maintain a competitive edge.

In November 2006, Defendant Gentilella entered into a Non-Competition Agreement with Ride-Away as a condition of his employment as a sales consultant.  (Doc. 1-2 at 1-6).  Gentilella was ultimately promoted to a management position, but continued to engage in and perform sales in this position.  Similarly, as a condition of her employment in May 2008, Defendant Tracey signed a Non-Competition Agreement when she was hired as a sales

consultant by Ride-Away. (Doc. 1-2 at 7-12). Among other things, the Agreements contained restrictive covenants. Paragraph 1 of both Agreements provides as follows:

> **Restrictive Covenant and Disclosure of Information**: It is understood and agreed by the parties hereto that all office records information, discussions, identity of clients, techniques, business operations and methods of the Company shall be kept in strict confidence. Employee/Promisor shall not, either during the term of this Agreement or any renewals thereof, or at any time thereafter, use or disclose to any person, corporation, association, partnership or firm any information concerning (i) the names and addresses of any clients, (ii) any business plans or proposals, (iii) any financial information of any nature, (iv) any business techniques or other confidential information of the Company. Employee/Promisor also agrees that he shall not, either during the term of this Agreement or any renewals thereof, or at any time thereafter, directly or indirectly for himself or on behalf of any person, corporation, association or other entity with or as assistant to, or agent, or stockholder of any person, partnership or corporation, solicit any of the accounts, patients or clients of the Company that exist during his employment with the Company.

(Doc. 1-2 at 8). Paragraph 2 provides as follows:

> **Covenant Not to Compete:** Employer/Promisor hereby covenants and agrees that he will not engage, in any business, for profit or otherwise which would be directly or indirectly competitive to or with the Company, or would in any way be substantively competitive with the Company, in the Town of Londonderry, New Hampshire, and for a radius of two hundred (200) miles from Londonderry, New Hampshire and further, for a radius of two hundred (200) miles from any current and future Company locations including, but not limited to the Company locations situated at North Attleboro, Massachusetts, East Hartford, Connecticut, Norwalk, Connecticut, Essex Junction, Vermont, Beltsville, Maryland, Gray, Maine, Norfolk, Virginia, Richmond, Virginia, West Norriton, PA and Tampa, FL for a period of one (1) year from the date of Employee/Promisor's termination of employment with the Company. Employee/Promisor understands that the Company has customers throughout the two hundred (200) mile radii of the Company locations set forth herein, and further understands that a material portion of Company's market is comprised of customers spread throughout these geographical areas, and hereby agrees that the geographic scope of two hundred (200) miles from any current and future Company location is reasonable

and proper under the circumstances, and therefore waives any challenges to the reasonableness of said scope. Employee agrees not to solicit any other employee of Ride-Away Corporation to leave the employ or (sic) Ride-Away Corporation at any time during the term of this agreement.

The words "engage in the business of" include but are not limited to, owning or having an ownership interest in, consulting with, assisting, being employed by, being an agent for, being an independent contractor of, being a director of, being an officer of being a shareholder of, or endorsing the goods or services of any person, corporation, association or other entity, other than the Company, whether or not for profit or compensation.

It is understood and agreed that Employee/Promisor is receiving good and valuable consideration in return for granting the Covenant Not to Compete set forth herein, and that said covenant is an integral part of his employment with the Company.

*Id.* at 9. In addition, the Agreements contemplated and provided for injunctive relief in the event of a breach of the Agreement. In pertinent part, paragraph 3 provides as follows:

**Remedies for Breach:** Recognizing the fact that the Company may be without an adequate remedy at law, in the event of a breach or threatened breach by the Employee/Promisor of the provisions of this Agreement, and recognizing that Employee/Promisor's employment is based primarily upon the covenants and assurances herein made and evidenced, it is therefore agreed that the Company shall be entitled to an injunction restraining the Employee/Promisor from acting in any manner inconsistent with the Employee/Promisor's covenants contained in this Agreement. Nothing herein shall be construed so as to prohibit the Company from pursuing any and all other remedies available to the Company for such breach, at law or in equity, including the recovery of damages from the Employee/Promisor. In any event, the Employee/Promisor agrees to pay all of the Company's reasonable costs and attorneys fees incurred in enforcing this Agreement, irrespective of the remedy(s) sought.

Plaintiff alleges that during their employment with Ride-Away, Defendants Tracey and Gentilella were thoroughly trained and had virtually unlimited access to Ride-Away's confidential business information, as well as access to Ride-Away's clients and their contact information.

Gentilella and Tracey left their employment with Ride-Away in June and July 2009, respectively. Thereafter, both Defendants began working for Defendant Mobility, a direct competitor of Ride-Away. As employees of Mobility, Tracey and Gentilella allegedly solicited Ride-Away's clients and employees on behalf of Mobility using confidential business information in breach of their Agreements. As to Defendant Mobility, it is alleged that Mobility was made aware of the Agreements with Tracey and Gentilella and nevertheless induced and assisted both in breaching the same, thereby tortiously interfering with the contractual relationships between Tracey and Gentilella and Ride-Away and also between Ride-Away and its clients. In support, Plaintiff proffers certain declarations from current employees and customers of Ride-Away.

In its Amended Motion, Plaintiff seeks injunctive relief as to all three Defendants. Specifically, as to Tracey and Gentilella, Plaintiff seeks to enjoin them from utilizing and/or disclosing Ride-Away's confidential information and/or trade secrets; from working with Mobility or otherwise breaching the non-compete provision of the Agreements; from soliciting any of Ride-Away's clients, accounts, or patients; from soliciting Ride-Away's employees; and from making further false and defamatory statements against Ride-Away. As to Defendant Mobility, Plaintiff seeks to enjoin it from continuing to induce Tracey and Gentilella in their on-going breach of their respective Agreements; and to enjoin it from continuing to employ Tracey

or otherwise assisting Tracey and Gentilella in the breach of their Agreements. As to all three Defendants, Plaintiff seeks to enjoin them from tortiously interfering with advantageous business and contractual relationships between Ride-Away and Ride-Away's existing clients, patients, and accounts.[3]  (Doc. 12 at 2-3).

By their response, Defendants Tracey and Mobility urge that Plaintiff has failed to meet its heavy burden to warrant the extraordinary measure of injunctive relief because Plaintiff does not have a substantial likelihood of success on the merits of any of its claims, nor can it meet the other elements necessary for such relief. By Tracey's argument, the restrictive covenants are unenforceable under New Hampshire law, because the restrictions in the Agreement are greater than necessary and impose an undue hardship on her, particularly in the current economic environment. She also attacks the sufficiency and veracity of Plaintiff's proffered evidence.[4] Even if her Agreement is enforceable, Tracey urges she has not breached her Agreement because simply working for a competitor does not harm a legitimate business interest of Plaintiff. Further, Tracey submits that Plaintiff lacks proof that she actually solicited its clients or that she

---

[3]In support, Plaintiff attached two affidavits to its Complaint and in connection with this hearing submitted Plaintiff's response to requests for admissions, to request for production of documents, and answers to interrogatories, as well as copies of the declarations of James E. Smith, Mark Lore, James Scruggs, James Ronald Kelley, Pedro Toiran, Mark Paris, and the affidavit of Aaron Gardner. *See* Pl. Ex.1. Plaintiff also submitted a rebuttal affidavit from Mark Lore and a copy of Tracey's May 9, 2008 offer letter. Pl. Ex. 2.

[4]Tracey has moved to strike the affidavit of Mary Ann Keckler which was attached to Plaintiff's Verified Complaint on the basis that the affidavit is fraudulent. (Doc. 14). In support, Defendants include their own affidavit from Ms. Keckler indicating that the original affidavit includes averments she never made. Plaintiff's response (Doc. 28) contends that the form of the affidavit submitted with its Complaint is proper, but nevertheless does not object to the withdrawal of same. Plaintiff's response provides a less than complete explanation and accordingly, the court **grants** Defendant's motion (Doc. 14) to the extent that the court has not considered  the affidavit submitted by the Plaintiff on its request for injunctive relief. The affidavit shall remain in the record however.

used or disclosed its confidential business information.  By her account, she was forced to leave Plaintiff's employ because of the crude and rude manner in which she was treated by Ride-Away's owner and president, Mark Lore ("Lore"), and she urges that no reformation of the agreement is in order in this case because of this bad faith behavior by Lore.  Further, given the nature of the services provided to America's veterans, any injunction would be injurious to the public interest.  (Doc. 15 at 2-14).

As for Mobility, it similarly urges that no injunction should issue on the tortious interference claims as Plaintiff is not substantially likely to succeed on either claim, there is no showing of irreparable harm, the equities favor Mobility, and the public interest would not be served by such an injunction.

Defendants also challenge the veracity of certain of Plaintiff's other declarations and offer their own contrary declarations in support that Tracey was not seeking to do business with Ride-Away clients.[5]  (Doc. 15-2).

II.

A.

Rule 65 of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction.  The purpose of a preliminary injunction is to maintain the *status quo* until the

---

[5]At the hearing, defense counsel also objected to Plaintiff's submissions, in particular, the affidavits served at 4:00 p.m. on November 25, 2009, as being untimely.  However, pursuant to the Court's Order following the status conference (Doc. 10), the court accepts these declarations/affidavits as timely.  As to the declaration of Lore served the morning of November 30, 2009, the court allowed the affidavit as rebuttal to Defendants' claim of bad faith.  As to the declaration/affidavit of a Mr. Dreschner, who was represented to be a customer solicited by Gentilella, and which declaration/affidavit was presented the morning of oral argument, the court strikes the declaration/affidavit as untimely.

court can enter a final decision on the merits of the case. *United States v. DBB, Inc.*, 180 F.3d 1277 (11th Cir. 1999); *see also Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). A party seeking entry of a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205 (11th Cir. 2003); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Haitian Refugee Ctr., Inc. v. Baker*, 949 F.2d 1109, 1110 (11th Cir. 1991).

"[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)). The entry of a preliminary injunction is "the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Siegel*, 234 F.3d at 1179 (citations omitted). A plaintiff may support its motion for a preliminary injunction by setting forth allegations of specific facts in affidavits. M.D. Fla. R. 4.06(b)(2), 4.06(b)(3). In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

B.

As to the interpretation and enforceability of the Non-Competition Agreements at issue, the parties agree that New Hampshire law applies.[6]  In New Hampshire, a "breach of contract occurs when there is a failure without legal excuse, to perform any promise which forms the whole or part of a contract." *Poland v. Twomey*, 937 A.2d 934, 937 (N.H. 2007) (quoting *W. Gate Vill. Ass'n v. Dubois*, 761 A.2d 1066, 1071 (N.H. 2000)).

In New Hampshire, the public policy "encourages free trade and discourages covenants not to compete." *Concord Orthopaedics Prof'l Ass'n v. Forbes*, 702 A.2d 1273, 1275 (N.H. 1997).  Thus, under New Hampshire law, covenants not to compete are looked upon with disfavor and must be narrowly construed. *Merrimack Valley Wood Prods., Inc. v. Near*, 876 A.2d 757, 762 (N.H. 2005).  "A restraint on employment is reasonable only if it is no greater than necessary for the protection of the employer's legitimate interest, does not impose undue hardship on the employee, and is not injurious to the public interest." *Concord,* (quoting *Moore v. Dover Veterinary Hosp., Inc.*, 367 A.2d 1044, 1047 (N.H.1976)). Notwithstanding, "restrictive covenants are valid and enforceable if the restraint is reasonable, given the particular circumstances of the case." *Merrimack,* 876 A.2d at 762.  To that end, the New Hampshire Supreme Court has held that the general restriction against competition must be limited to the geographic area in which the employee had client contact, recognizing that this is "usually the extent of the area in which the employer's goodwill is subject to

---

[6]The Agreements contain a "Governing Law" paragraph which provides jurisdiction for acts violative of the Agreement to be under the State of New Hampshire. *See* (Doc. 1-2 at 11).

appropriation by the employee." *Id.* at 763.[7] Similarly, the scope of time to which a restriction applies is fact-specific and shall be no greater than necessary to protect the plaintiff's legitimate business interests. *Id.*[8] In the face of an overly broad restrictive covenant, New Hampshire law grants courts the power to reform such agreements provided the employer acted in good faith in the execution of the employment agreement.[9] *Id.* at 764.


III.

The court initially analyzes the appropriateness of injunctive relief utilizing the federal four-prong standard. *See generally*, *Ferrero v. Assoc. Materials, Inc.*, 923 F.2d 1441,

---

[7]*See, e.g., Maddog Software, Inc. v. Sklader*, 382 F. Supp. 2d 268, 283 (D. N.H. 2005) (no basis for restricting competition in geographic area encompassing entire northeast); *Technical Aid Corp. v. Allen*, 591 A.2d 262, 267 (N.H. 1997) (covenant against competition within a 100-mile radius was greater than necessary to protect the business interest where employee had not done business in those regions).

[8]The period of time deemed reasonable is determined on a case-by-case basis. *See e.g., ACAS Acquisitions, Inc. v. Hobert*, 923 A.2d 1076 (N.H. 2007) (two-year restriction found reasonable); *Concord*, 702 A.2d at1276-77 (two-year restriction found to be reasonable); *Technical Aid*, 591 A.2d at 269 (18-month restriction did not impose undue hardship and was enforceable); *Maddog Software, Inc.*, 382 F. Supp. 2d at 283 (failed to explain legitimate business reason for restricting competition for period of three years).

[9]It appears that there is no written employment agreement as such. At the hearing, Defendants argued that New Hampshire case law's repeated references to restrictive covenants as being ancillary to employment contracts, as opposed to a stand alone non-compete agreements, is suggestive of the fact that New Hampshire law does not allow stand-alone agreements. It cites no authority in support of this contention. Here, at a minimum, Tracey (and Gentilella) entered into an oral contract for employ as recognized by the Agreements and the offer and written acceptance of the positions. Based on the court's research, there does not appear to be a prohibition to a stand alone non-compete agreement under New Hampshire law or one ancillary to an oral employment agreement. *See, e.g., Kaechele v. Nova Info. Syst., Inc.,* No. CIV 00-313-JD, 2001 WL 1134726 (D. N.H. Sept. 24, 2001) (non-compete agreement signed in context of at-will employment).

1448 (11th Cir. 1991) (applying federal law to determine whether preliminary injunction was properly issued by federal court sitting in diversity). Thus, the movant bears the burden of persuasion as to all four elements in order to establish an entitlement to injunctive relief. *CBS Broad. Inc. v. EchoStar Commc'ns Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2002) (citing *Siegel*, 234 F.3d at 1176).

A.

On the issue of Tracey's alleged breaches of the Agreement, Plaintiff is substantially likely to succeed on the merits of the claim that Tracey violated the non-compete provision by going to work for Mobility as alleged in Count I. In pertinent part, the Agreement provides that "[s]he will not engage, in any business, for profit or otherwise which would be directly . . . competitive to or with [Ride-Away] . . . for a period of one (1) year from the date of [her] termination . . ." The undisputed evidence reveals that shortly after Tracey's departure from Ride-Away's employment on July 7, 2009, she went to work for a direct competitor, Mobility.

As for the allegations of solicitation of customers and the use of proprietary information, the proffered evidence is disputed and thus, at this point, less compelling. The "Restrictive Covenant and Disclosure of Information" provides in pertinent part that Tracey "shall not, either during the term of this Agreement or any renewals thereof, or at any time thereafter, directly or indirectly for [herself] or on behalf of any person, corporation, . . . solicit any of the accounts, patients or clients of [Ride-Away] that exist during [her] employment with [Ride-Away]."[10] One former customer of Plaintiff, James E. Smith, who met Tracey

---

[10]As Plaintiff seeks to define its "accounts," "patients" and "clients," they include both actual disabled veterans and other customers it has serviced or sold its products to as well as referral sources such as the Veterans Administration ("V.A.") hospital and volunteer

originally in her capacity as a sales representative for Ride-Away, declares that, as an

employee of Mobility, Tracey came to his hospital room at James A. Haley, V.A. Hospital to

sell him a vehicle. (Declaration of James E. Smith, Pl. Ex.1). Plaintiff also proffers the

declarations of James Scruggs, III, and James Ronald Kelley in support of its claim that

Tracey in her sales capacity with Mobility sold or attempted to sell vehicles to individual

clients with whom she had a prior business relationship while at Ride-Away. (Pl. Ex. 1). The

affidavit of Robert Smith, a director with the PVA in Hillsborough County, Florida, is

similarly offered as evidence of Tracey's solicitation in violation of her Agreement. Mr.

Robert Smith avers that he overheard Tracey speaking with SSGT. Burris at the V.A. hospital

telling him that Plaintiff was no longer doing the VET Mobile Opts and that Mobility was

now in charge.[11] (Doc. 1-2 at 14). Plaintiff also submits the Declaration of Lore, as owner

and president of Ride-Away, who states that during Tracey's employment with Ride-Away,

she had client contact with the volunteer organization, Operation Support Our Troops, and

after leaving, Tracey conducted business with Operation Support Our Troops while an

employee of Mobility. *See* Declaration of Lore. (Pl. Ex. 1). It also clearly appears that

---

organizations that refer veterans and their families to such providers as Plaintiff and Mobility. As discussed below, to the extent that Plaintiff would seek to enjoin Defendants from doing further business with referral sources, New Hampshire law appears to prohibit the same on the basis that such referral sources are not clients. *See Concord*, 702 A.2d at 1276.

[11]Defendants challenge the sufficiency of this affidavit, in particular, the jurat. *See* (Doc. 15 at 3-4). Defendant appears correct that the certification by the notary is incomplete under Florida law. Among other requirements, Fla. Stat. § 117.05(5) requires a notary public to certify the type of identification, either based on personal knowledge or other form of identification, upon which he/she is relying, as a notary public is not authorized to notarize a signature unless he or she personally knows, or has satisfactory evidence, that the person whose signature is to be notarized is the individual who is described in and who is executing the affidavit.

Tracey has had contact with the V.A. and other referral sources whom she first met because of her work for Plaintiff.

While Tracey denies that she has solicited Plaintiff's clients and the anecdotal evidence concerning her doing business with the Support Our Troops organization suggests little impropriety on her part, on the basis of the evidence presented, I conclude that Plaintiff has a substantial likelihood of success on the merits of its claim in Count III that Tracey solicited a few individuals who previously were Plaintiff's clients.

As to Tracey's alleged breach of the "Restrictive Covenant and Disclosure of Information" (Count II), Plaintiff alleges that Tracey improperly *used* confidential and/or proprietary information. The proffered evidence, while disputed, demonstrates that Tracey has utilized some proprietary information developed by Ride-Away against the company to gain a price advantage with customers she is now soliciting. The Scruggs's declaration coupled with the declaration of James Ronald Kelley which sets forth Tracey's comments about how many vehicles she has sold while at Mobility, three of which were to Ride-Away clients, and her reference to being able to offer more for client trade-ins because Ride-Away still uses its AVV guide demonstrates an improper use of proprietary, if not confidential, information in violation of the Agreement's covenant not to use (iii) financial information of any nature or (iv) any business techniques or other confidential information of Ride-Away.[12]

_____

[12]The AVV guide developed by Plaintiff has been represented to contain proprietary pricing information for trade-in vehicles. The Declaration of Lore states that based upon knowledge he acquired from his twenty-plus years in the handicapped equipment industry, he developed the AVV Guide which contains trade-in values that Ride-Away will offer to clients for vehicles. A copy of the AVV Guide is provided to Ride-Away's sales representatives and would have been provided to Gentilella and Tracey when they were employed with Ride-Away. *See* Declaration of Mark Lore, Plaintiff's Exhibit 1. Defendants counter that such

13

In sum, there is no question that Tracey is currently employed with a direct competitor of Plaintiff and is engaged in the same type of business– the sale of modified vehicles for the handicapped– operating out of the Tampa Bay area where both companies do business. She has not avoided doing business with clients of Plaintiff when the opportunity has presented itself and has sought to promote her new company with misleading information. She possesses some proprietary information, despite her claims otherwise, and on the proffered evidence, she has employed it to her advantage with Mobility. By my consideration, such evidence establishes a substantial likelihood that Plaintiff will prevail, in part, on the claim that Tracey, without legal cause, breached this aspect of the Agreement.[13]

### B.

To qualify as irreparable harm, the asserted injury "must be neither remote nor speculative, but actual and imminent." *Siegel,* 234 F.3d at 1176-77 (quoting *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990)). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *City of Jacksonville*, 896 F.2d at 1285. The possibility that adequate compensatory relief will

pricing information is available from vendors.

[13]Other aspects of Plaintiff's allegations are not adequately developed on this motion. On Plaintiff's claim in Count II of Tracey's *disclosure* of confidential information to Mobility or others, I find Plaintiff's evidence lacking at present. Similarly, as to Tracey's alleged solicitation of Ride-Away employees in Count III, Plaintiff fails to carry its burden of establishing a substantial likelihood of succeeding on this claim. Although Plaintiff presents declarations from Ride-Away employees, Mark Paris and Pedro Toiran (Plaintiff's Exhibit 1), as evidence of her efforts to solicit these employees away from Ride-Away, these individuals specifically declare that Tracey did not solicit them to come work for Mobility. *See id.* Further, Tracey's affidavit declares that she has not solicited Ride-Away's employees. *See* (Doc. 15-2 at 7). On the evidence presented, I am obliged to conclude that Plaintiff has failed to satisfy its burden entitling it to injunctive relief on these aspects of Counts II and III.

be available at a later date, in the ordinary course of litigation, weighs heavily against injunctive relief.  *Id.*  A plaintiff may, however, establish irreparable injury where the total damages associated with plaintiff's losses, such as loss of customer goodwill and loss of fair competition, would be difficult to calculate.  *Id.*  New Hampshire courts have similarly defined "irreparable injury" as a "substantial injury that is not accurately measurable or adequately compensable by money damages."  *Adams v. Stanley*, 237 F. Supp. 2d 136, 146 (D. N.H. 2003).

Here, Plaintiff argues that, absent a preliminary injunction, it will suffer irreparable harm in the form of the Defendants' continued raiding of its clients, the continued use of its protected confidential information to its detriment, the continued potential loss of revenue due to improper solicitation of clients, continued interference with its contractual and business relationships, and damage to its reputation in the industry.  (Doc. 12 at 22).  Plaintiff urges that the harm may not be rectified solely by monetary damages, and thus, injunctive relief is appropriate.  Defendant responds that the asserted irreparable injury is neither actual, nor imminent.  Specifically, Defendant argues that Plaintiff submitted no evidence to indicate that Tracey solicited business from any customer with whom she had a relationship while at Ride-Away or that anything she has done since being with Mobility has diverted business from Ride-Away.  Further, Defendant submits that there is no evidence of defamation or that any alleged defamatory statement had any effect on its alleged recipient.[14]

_____

[14]As noted above, Plaintiff has also sued Tracey for defamation and seeks an injunction enjoining her from making further defamatory statements to Ride-Away's clients, patients and/or accounts.  However, in Florida, it is well established that equity will not enjoin an actual or threatened defamation.  *Demby v. English*, 667 So. 2d 350, 355 (Fla. Dist. Ct. App. 1995).  *See also Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157 (2007)

By my consideration, to the extent that Plaintiff complains that Plaintiff has done business with its clients, such appears remediable by an award of damages. But certain of the harms complained of are not so easily quantified. For instance, Plaintiff has provided support for its position that there has been a loss of goodwill and fair competition which may not be easily remedied by monetary damages. The affidavit of Robert Smith declares that he overheard Tracey advise SSGT Burris at the V.A. hospital that Ride-Away was no longer involved with the VET Mobile Opts program and that Mobility was now in charge of that program.[15] (Doc. 1-2 at 13-14). Such negative and untrue statements are damaging to the reputation and goodwill of Ride-Away and here employed as a way of diverting clients to Mobility. Similarly, the Declaration of James Ronald Kelley that Tracey is using Ride-Away's proprietary information, i.e., the AVV guide, to the detriment of Ride-Away and to Mobility's benefit cannot be easily quantified into a monetary award.

Thus, by my consideration, Plaintiff has proffered adequate evidence that supports a finding of an irreparable injury which cannot adequately be compensated by money damages. While an employee of Ride-Away, Tracey cultivated positive business relationships and acquired confidential and proprietary information regarding Ride-Away's products, services and clients. To allow Tracey to take advantage of those relationships and/or confidential and proprietary information belonging to Ride-Away for the benefit of Mobility is exactly the type of conduct a covenant not to compete is intended to prevent. *See Merrimack*, 876 A. 2d at

---

(discussing prior restraints on speech as unconstitutional under the First Amendment). Accordingly, this claim is not considered further on this motion.

[15]I have considered this sworn statement despite the technical deficiency of the jurat.

763 (employer has legitimate interest in preventing its employees from appropriating its goodwill to its detriment). Thus, I agree with Plaintiff that at least at this juncture, preliminary injunctive relief is appropriate to prevent a further diminution in Plaintiff's goodwill and use of its confidential information against it.

C.

Having found an irreparable injury, the court next considers whether the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause to Tracey; and if issued, would the injunction be adverse to the public interest. Tracey contends that in these economic times it would be an extreme hardship for her to not be able to work with Mobility. On the other hand, Plaintiff urges that entry of a preliminary injunction would not impose an undue hardship upon Tracey given her prior long-standing employment in the automobile industry. Plaintiff also submits that the temporal and geographic limitations contained in the Agreement do not unnecessarily restrict Tracey in obtaining gainful employment elsewhere.

I conclude that in the balance, this factor favors entry of an injunction. Even under New Hampshire law, such covenants are enforceable to protect the legitimate interests of employers. As set forth below, the scope of the injunctive remedy permitted under New Hampshire law appears quite limited. The court may not enforce a covenant that wholly prevents Tracey from working. *See Concord*, 702 A.2d at 1277. In that circumstance, the harm in not enforcing the Agreement outweighs any harm she may actually suffer.

Defendants urge that enforcement of the restrictive covenants here would disserve the public interest, particularly disabled veterans who would have less choice in these matters.

Further, to prohibit those military personnel from being able to seek out the services of Tracey and her new employer would directly contravene recent legislation enacted to protect military personnel in their domestic affairs. However, the mere fact that enforcement of the Agreement would, in some fashion, limit the public's choice is not enough to invalidate the restriction as being injurious to the public interest. Such consideration is consistent with New Hampshire law also. *See Technical Aid,* 591 A.2d at 267. As discussed below, Plaintiff has a legitimate business interest in preventing its employees from appropriating proprietary or confidential information related to customers and pricing and the goodwill generated from the employee's contact with customers. Tracey was advised at the outset of her employ that it was subject to a non-compete provision. Enforcement of the Agreement to the extent permitted by New Hampshire law will serve the public interest.

D.

As noted above, New Hampshire takes a narrow view on the enforceabilty of these restrictive covenants, permitting enforcement only when the restrictions are reasonable in light of the legitimate interests of the employer. Under New Hampshire law, "the first step in determining the reasonableness of a given restraint is to identify the legitimate interests of the employer, and to determine whether the restraint is narrowly tailored to protect those interests." *Technical Aid,* 591 A.2d at 266. As an employer, Plaintiff has demonstrated a legitimate business interest in preventing its employees from appropriating its goodwill to its detriment. *See id.*; *Concord,* 702 A.2d at 1276; *Merrimack*, 876 A.2d at 762-63. The obvious purpose of the Agreements was to protect Plaintiff's client and account base, along with its goodwill and its proprietary information and processes. By the proffered evidence and sworn

complaint, Tracey was trained on product information marketing and sales strategies employed by Plaintiff, client development and business plans, and she had contact with clients and access to client information, as well as vendor and pricing information used by Plaintiff. A fair conclusion, even on this limited record, is that Tracey employed the sum total of all this quite successfully on behalf of the Plaintiff and presently, is doing so as an employee of Mobility. Thus, consistent with New Hampshire law, Plaintiff has adequately established recognized business interests which it may seek to protect and against which its proposed injunction must be measured for reasonableness.

Because covenants restricting trade or competition are looked upon with disfavor and thus must be narrowly construed under New Hampshire law, such covenants are enforceable only where the restriction is no greater than necessary to protect the legitimate interests of the employer, the restriction does not impose an undue hardship on the employee, and is not injurious to the public interest. "[T]he general restriction against competition must be limited to the geographic area in which the employee had client contact in order to satisfy the "narrowly tailored" test. *Id.* at 763. Here, the Agreement restricted Tracey from engaging in a business directly or indirectly competitive to or with Plaintiff's business at specified and unspecified future locations of Ride-Away and within a 200-mile radius of those locations. On its face, the restriction is overbroad. While employed at Ride-Away, Tracey operated out of the Tampa, Florida, office and her sales work was performed in the Tampa area.[16]

---

[16]It appears that she had four sales outside of Florida while with Plaintiff, one in Texas, two in Alabama, and one in Rhode Island. *See* Declaration of Lore (Pl. Ex. 1).

Consistent with New Hampshire law, I find the geographic scope of the Covenant Not to Compete overly broad to protect the legitimate interests of Plaintiff.

A similar conclusion is necessary on the Restrictive Covenant and Disclosure of Information provision. As set forth above, that provision bars Tracey, during her employment and "at any time thereafter," from directly or indirectly "soliciting any of the accounts, patients or clients of the Company that exist during [her] employment with the Company." This covenant is overbroad in contemplation of New Hampshire law for several reasons. It is unlimited in its temporal and geographic scope and places no limitations on the nature or purpose of the later solicitation. Furthermore, Plaintiff seeks to broadly define its account and client base with the intention of including not only all the customers it served during Tracey's employ, but also the referral sources from whom it gets many of these clients, and it seeks to bar Tracey from contacting any of its clients that existed during her employment regardless of whether she had contact with them or not. While Plaintiff is correct that an employer has a legitimate interest in protecting the goodwill of its business and in preventing the appropriation of same by an employee now that she is employed with a competitor, no such legitimate business interest extends to *new* clients under New Hampshire law. *See Concord,* 702 A.2d at 1276 ("While COPA possesses a legitimate business interest in prohibiting Forbes from competing for existing patients, no such legitimate interest exists as to new patients."). Additionally, the New Hampshire Supreme Court has rejected an employer's attempts to prohibit an employee's solicitation of customers with whom the employee previously had no contact. *See Merrimack*, 876 A.2d at 763-64 (court found restrictive covenant precluding defendant employee from doing business with any clients who transacted

business with employer in previous year to go beyond the employee's sphere of customer goodwill). Furthermore, the New Hampshire Supreme Court has rejected the notion that an employer may claim groups referring it new clients as its "clients." *See Concord,* 702 A.2d at 1276.

Thus, while New Hampshire law would appear to permit limitations on Tracey soliciting Ride Away's clients with whom she had direct or indirect contact during her employment with Ride-Away, this provision goes far beyond such restriction. Such a blanket restriction on competition in any form has been found to be greater than necessary to protect an employer's legitimate interests. *See Technical Aid*, 591 A.2d at 267. Furthermore, the claim that existing clients should include, among others, referral sources or accounts such as the James A. Haley, V.A. Hospital and other organizations that facilitate the procurement of modified vehicles for use by handicapped veterans and others, contravenes the recognized principle in New Hampshire requiring the narrow tailoring of covenants not to compete.

These findings render the restrictive covenants unenforceable under New Hampshire law.[17] However, New Hampshire permits the partial enforcement, or modification or reformation of such agreements in certain circumstances. Thus, in the face of an overly broad restrictive covenant, New Hampshire law grants courts the power to reform such agreements provided the employer acted in good faith in the execution of the employment agreement. *Merrimack,* 876 A.2d at 764.

Here, Tracey urges bad faith on the part of Plaintiff at the outset of her employment, and she accuses Lore of rude and crude treatment of her such that she was forced to leave the

---

[17]The findings also support the conclusion that because of overbreadth, the restrictive covenants impose an undue hardship under the second prong of the New Hampshire standard.

company. Tracey further claims that she was not aware that her employment with Plaintiff would be subject to a non-compete agreement until well after she started and that, despite her years of experience in car sales, she did not know what a non-compete provision was in any event. On the proffered evidence, these claims are not believable. Tracey has twenty years experience selling cars, and any claim that she was unaware of non-compete provisions rings hollow. More significantly, she was advised prior to starting work that a non-compete agreement would be required by Plaintiff. Thus, her offer letter from Plaintiff dated May 9, 2008, specifically identified the Non-Compete Agreement as a pre-condition of employment. Pl. Ex. 2. As reflected thereon, Tracey signed the letter accepting the job offer on May 12, 2008, the same day she started work for Plaintiff. The alleged bad faith in "forcing" the Agreement on her is not demonstrated. The proffered evidence indicates Tracey knew or should have known full well before she began work that she would be subject to a non-compete agreement. The alleged difficulties with Lore that later developed do not speak to this issue.

Thus, despite the overbreadth of these restrictive covenants, New Hampshire law permits reformation of the same and such is appropriate here. Accordingly, I recommend reforming the restrictive covenants to preclude Tracey and Gentilella for the period of one year[18] from soliciting or otherwise conducting business within 200 miles of Ride-Away's Tampa, Florida, office related to the sale or service of handicapped-modified vehicles with

---

[18]A one (1) year period is reasonable in the circumstances and consistent with New Hampshire law. *See* fn. 8 above and cases cited therein. *See also Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*, 789 F. Supp. 1201, 1211 (D. N.H. 1992) (reforming overly broad non-compete covenant to a period of three, rather than five, years).

any customer of Ride-Away, past or existing, with whom they dealt while employed with Ride-Away. In this regard, "client" does not include referral sources for new clients.

E.

On this conclusion, I find it unnecessary to separately address injunctive relief against Mobility. In contemplation of New Hampshire law, Tracey (and Gentilella) were not wholly prohibited from seeking employment from Mobility. Beyond demonstrating that Mobility continued to employ Tracey and Gentilella even after being notified of the non-compete agreements, there is no demonstration that Mobility otherwise interfered with any contractual relationship. To the extent that Mobility has done business with legitimate clients of Plaintiff inappropriately, monetary damages appear the available and appropriate remedy.[19]

IV.

Based on the foregoing, it is recommended that the court **GRANT in part** the Plaintiff's motion and enter a preliminary injunction limited in scope so as to protect

---

[19]These claims are governed by Florida law. The elements of a cause of action for tortious interference with a contractual relationship are: "(1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the contract's breach, (4) absence of any justification or privilege, and (5) damages resulting from the breach." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc*., 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Florida Tel. Corp. v. Essig*, 468 So.2d 543, 544 (Fla. Dist. Ct. App.1985)). The elements of a cause of action in Florida for tortious interference with a business relationship are as follows: "(1) existence of a business relationship; (2) knowledge of relationship on part of defendant; (3) intentional and unjustified interference with relationship by defendant; and (4) damage to plaintiff as result of breach of relationship. . . ." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814-15 (Fla. 1994).

In appropriate circumstances, injunctive relief may be available against a competitor company in a tortious interference with contract claim. *See Paul's Drugs, Inc. v. S. Bell Tel. & Tel. Co.*, 175 So. 2d 203, 205 (Fla. Dist. Ct. App. 1965).

Plaintiff's legitimate business interests thereby: (1) enjoining Ms. Tracey and Mr. Gentilella for a period of one (1) year from directly or indirectly conducting business within 200 miles of Ride-Away's Tampa, Florida, office related to the sale or service of handicapped-modified vehicles with any client of Ride-Away, past or existing, with whom either conducted business or sought to conduct business with, either directly or indirectly, while an employee of Ride-Away; and (2) enjoining Ms. Tracey and Mr. Gentilella from otherwise disparaging Ride-Away's goodwill; using, employing or disclosing to others any confidential or proprietary information of Ride-Away including client lists or information, business plans, processes or techniques, or pricing or other financial information; and requiring that both return to Plaintiff any of its property obtained by them during their employ still in their possession. As a condition of this injunction, Plaintiff should be required to post a cash or surety bond in the amount of ten thousand dollars ($10,000.00) in a form acceptable to and approved by the Clerk of Court for the United States District Court, Middle District of Florida.[20] In all other respects, it is recommended that the court deny the motion.

Respectfully submitted on this
29th day of December 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

---

[20]Given the limited restrictions actually imposed under such injunction, a larger bond appears unnecessary and inappropriate.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record